# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DUSTIN WILSON, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00332 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| SWINEY, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Dustin Wilson, proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, two Red Onion State Prison ("Red Onion") officials, subjected him to excessive force, failed to protect him from that force, and denied him access to medical treatment. This matter is before me on the parties' cross motions for summary judgment.[1] After reviewing the record, I conclude that Wilson's motion for summary judgment must be denied and defendants' motion for summary judgment must be granted in part and denied in part.

## I.

Wilson alleges that on July 20, 2015, while housed at Red Onion in a segregation cell, he asked defendant Unit Manager ("UM") Swiney to place him in protective custody because Wilson felt that his life was "constantly placed in harm's way" and because Wilson "was not suppose[d] to be housed in general population." Wilson states that UM Swiney "began to laugh" and told Wilson that he was not going to place him in protective custody and that Wilson should stop asking. Wilson asked UM Swiney for an informal complaint so that he could grieve the issue and UM Swiney "suddenly became angered" and told defendant Lieutenant Kiser to "cuff Wilson." Lt. Kiser instructed Wilson to turn around to be cuffed and Wilson states that he "did as instructed." After Wilson placed his right hand into the tray slot to have the handcuff applied, Lt. Kiser told Wilson that he had put the wrong hand out and Wilson responded by telling Lt.

---

[1] Wilson moves for summary judgment on his excessive force claim.

Kiser that he had the "wrong cuff." Lt. Kiser called Wilson a "smart ass" and then "maliciously grabbed" Wilson's right hand, which caused a "loud popping noise" and "immediate pain." Wilson alleges that while he "was still complying and waiting to be cuffed," he heard a "loud hissing noise," turned his head around, and was sprayed by the defendants with Oleoresin Capsicum ("OC") spray[2] "directly into his face for a prolonged period of time." Wilson states that he was unable to breathe or see and felt "a sever[e] burning." The tray slot was then "slammed shut" and the defendants left Wilson to "suffer" without decontamination and did not call for medical assistance. Wilson states that "later," a nurse came to his cell during pill call. Wilson asked the nurse for assistance and the nurse told him to submit a sick call request. Wilson alleges that he wrote three separate requests for medical assistance, but he "never" received "any type of confirmation, assistance, or verbal response."

Wilson contends that Lt. Kiser and UM Swiney used excessive force against him, that UM Swiney failed to intervene to stop Lt. Kiser from using excessive force, and that both defendants failed to decontaminate him or call for medical assistance.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the

---

[2] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

2

district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

### III.

Defendants assert that Wilson's claims for injunctive relief are moot because Wilson is no longer housed at Red Onion. On August 14, 2017, Wilson advised the court that he was released from incarceration. If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot. *Blanciak v. Allegheny Ludlum Co.*, 77 F.3d 690, 698-99 (3d Cir. 1996). The transfer or release

of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer rendered moot his claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief). Accordingly, I conclude that Wilson's claims for injunctive relief are now moot and, therefore, will grant defendants' motion for summary judgment as to any claim for injunctive relief.

### IV.

To the extent Wilson brings this action against the defendants in their official capacity for monetary damages, his claim is not cognizable in § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, I will grant defendants' motion for summary judgment as to Wilson's claim for monetary damages against defendants in their official capacity.

### V.

Defendants argue that Wilson failed to exhaust his administrative remedies before filing this action. I conclude that there is a material dispute as to whether administrative remedies were available to Wilson and, therefore, will deny summary judgment on this ground.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be

4

pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

Defendants argue that Wilson's claims are barred from review by the court because he did not exhaust administrative remedies before filing this action. Wilson alleges that tried to obtain an informal complaint after the incident, but was "continuously denied." Defendants argue that because he filed six other regular grievances during the same calendar year, therefore, the grievance process was available to Wilson. However, just because Wilson was able to obtain grievance forms on other occasions does not necessarily mean that he was provided grievance forms regarding this incident. Construing the allegations as I must on a motion for summary judgment, I conclude that there is a material dispute as to whether administrative remedies were available to Wilson. Accordingly, I will deny defendants' motion for summary judgment on this ground.

# VI.

Wilson alleges that Lt. Kiser and UM Swiney used excessive force against him. Having reviewed the record, I conclude that genuine disputes of material facts preclude summary judgment and, therefore, will deny the parties' motions.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010).

Wilson alleges that he was complying with orders and did not provoke Lt. Kiser when Lt. Kiser "maliciously grabbed his arm" causing "a loud popping noise" and immediate pain, and that the defendants OC sprayed him directly in his face for a "prolonged period of time" while he was complying with orders. Defendants, on the other hand, contend that the force was applied in a good-faith effort to maintain or restore discipline after Wilson "talked back[]" to Lt. Kiser and "turned around" during the handcuffing procedure. Having reviewed the record as a whole and drawing all reasonable inferences as I must for consideration of each motion, I conclude that Wilson states a viable excessive force claim and that there are genuine issues of material fact precluding summary judgment on these claims. These same disputes of fact preclude

6

defendants' argument that that they are entitled to qualified immunity. *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). For these reasons, I will deny the parties' motions for summary judgment as to Wilson's excessive force claims.[3]

### VII.

Wilson alleges that UM Swiney failed to intervene to stop Lt. Kiser from using excessive force against him. Defendants contend that Wilson failed to allege any personal involvement by UM Swiney. Wilson specifically states that UM Swiney stood by and watched Lt. Kiser use excessive force, had the opportunity to stop the use of force, and yet failed to intervene.

Under the theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Accordingly, I conclude that Wilson's allegations state a plausible claim for relief. Inasmuch as there are genuine issues of material fact as to whether excessive force was used and because the determination of whether excessive force was used is critical to the determination of whether UM Swiney is liable under a theory of bystander liability, I conclude there are also genuine issues of material fact precluding summary judgment on this claim. Accordingly, I will deny defendants' motion for summary judgment as to this claim.

### VIII.

Wilson also alleges that Lt. Kiser and UM Swiney failed to decontaminate Wilson after OC spraying him and left him in his cell without calling for medical assistance while Wilson was suffering pain and difficulty breathing. Defendants contend that they should not be held liable because they are not prison medical providers and because Wilson "admits" that a nurse came to

---

[3] Defendants ask for the opportunity to file an additional motion for summary judgment as to this claim and I will grant their request.

7

him after the OC spraying incident. Nothing in the record suggests how long after the incident the nurse came to see Wilson; however, Wilson alleges that he "never" received medical assistance.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that the defendants were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). To state a medical treatment claim against non-medical personnel, the plaintiff must demonstrate that the non-medical personnel "were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physician's misconduct." *Lewis v. Angelone*, 926 F.Supp. 69, 73 (W.D. Va. 1996) (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990)). Wilson states that the defendants sprayed him directly in the face with OC spray for a "prolonged" period of time which resulted in his inability to see or breath and caused a "sever[e]" burning. He also alleges that the defendants left him in the contaminated cell without decontaminating him or calling for medical assistance. There is no evidence describing how long Wilson remained in that condition or whether he was able to decontaminate himself at all with water in his cell. I conclude that Wilson's allegations state a plausible claim for relief and that defendants have not demonstrated that they are entitled to summary judgment as to this claim.

Moreover, defendants are not entitled to qualified immunity as to this claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 133 S. Ct. 9 (2012). I have already determined that Wilson's allegations state a plausible claim for relief. Moreover, a reasonable officer would have known at that time, that failing to decontaminate or obtain medical assistance for an inmate after using OC spray on him would be unlawful. *See Mann v. Failey,* 578 F. App'x 267, 273 (4th Cir. 2014); *Williams v. Benjamin*, 77 F.3d 756, 764 n.4 (4th Cir. 1996). Accordingly, I will deny defendants' motion to summary judgment on the basis of qualified immunity.

## IX.

Defendants do not address Wilson's allegations that their conduct subjected him to cruel and unusual living conditions and/or constituted assault under Virginia law. Inasmuch as defendants will be given the opportunity to file a new motion for summary judgment regarding

the excessive force claim, I will also allow them to address these claims in the new motion for summary judgment.

**X.**

For the reasons stated herein, I will deny Wilson's motion for summary judgment and grant in part and deny in part defendants' motion for summary judgment.[4]

**ENTER**: This  5th   day of September, 2017.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[4] Defendants filed motions for a protective order to stay discovery until their motion for summary judgment was decided. Inasmuch as it has now been decided and most of Wilson's claims remain, I will deny their motions (Docket Nos. 18 and 43). I will also grant Wilson's motion to compel discovery (Docket No. 29). I note that even if he had been granted discovery previously, it would not have affected any of the claims that have been dismissed, particularly since they were dismissed on legal grounds, rather than factual ones.