IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| DUSTIN C. WILSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SWINEY, et al., )<br>    Defendants. ) | Civil Action No. 7:16-cv-00332<br><br>MEMORANDUM OPINION<br><br>By:   Joel C. Hoppe<br>        United States Magistrate Judge |

Plaintiff Dustin Wilson, appearing pro se, filed this suit under 42 U.S.C. § 1983, asserting that Defendants Unit Manager ("UM") Swiney and Lieutenant ("Lt.") Kiser (collectively "Defendants") violated Wilson's Eighth Amendment rights while he was incarcerated at Red Onion State Prison ("ROSP"). This matter is before the Court on Wilson's motion for sanctions, ECF No. 95, in which he alleges that Defendants spoliated evidence by failing to preserve video footage from July 20, 2015, the day of the alleged incident in question. Having considered the parties' arguments and all pertinent material, I find that Wilson has not satisfied his burden of showing that Defendants wrongfully lost the video footage, nor has he established prejudice from the loss of the footage. Accordingly, his motion will be denied.

I.      Background

The facts alleged come from the Complaint. On July 20, 2015, Wilson was being housed in a cell inside a segregation unit at ROSP. Compl. ¶ 7, ECF No. 1. Sometime between 10:00 a.m. and 3:00 p.m., UM Swiney and Lt. Kiser were passing through the unit when Wilson asked Swiney if he could be put in protective custody because he "felt his life was constantly being placed in harm's way" and because he was "not suppose[d] to be housed in General Population." *Id*. ¶ 9. Swiney denied Wilson's request, and Wilson asked Swiney for an informal complaint form "so that he could grieve the issue." *Id*. ¶ 11. Swiney "suddenly became angered" and

1

instructed Kiser to put Wilson in handcuffs. *Id*. ¶¶ 11–12. As Kiser was placing Wilson in handcuffs through the cell tray slot, he "grabbed Wilson's right hand," which made a "loud popping noise" and caused Wilson to experience "immediate pain." *Id*. ¶ 14. Wilson then turned around to face Swiney and Kiser, at which time Defendants sprayed Oleoresin Capsicum ("OC") gas "directly into his face for a prolonged period of time causing [him] to immediately not be able to breathe or see." *Id*. ¶ 15. Thereafter, Defendants closed Wilson's tray slot and refused to assist Wilson in finding medical assistance. *Id*. ¶ 20.

Wilson alleges that on the day of the incident, and for approximately three weeks afterwards, he tried unsuccessfully to obtain medical treatment for his injuries. *See id*. ¶ 22. He also alleges that he tried on several occasions to obtain an informal complaint form, but was "continuously denied, thus making it impossible to file necessary administrative remedies." *Id*. ¶ 23.

On July 11, 2016, Wilson filed suit in this Court seeking relief under 42 U.S.C. § 1983. He claims that Kiser and Swiney violated his rights under the Eighth Amendment by subjecting him to excessive force, failing to protect him from excessive force, and denying him access to medical treatment. Defendants denied that Wilson suffered any injuries or damages. *See* Defs.' Answer, ECF No 17. The parties thereafter filed cross-motions for summary judgment. *See* ECF Nos. 21, 23. In September 2017, District Judge Norman K. Moon[1] issued an opinion denying Wilson's motion and granting Defendants' motion in part. *See* Mem. Op. of Sept. 5, 2017, ECF No. 53.

---

[1] Judge Moon later transferred this case to District Judge James P. Jones for all further proceedings. *See* Oral Order of June 17, 2019.

In June 2019, less than three months before the scheduled trial date, Wilson filed a "Motion for Spoliation of Evidence" in which he asserted that Defendants failed to preserve video footage of the incident on July 20, 2015. He argued that under Virginia Department of Corrections ("VDOC") policy, Defendants had a duty to preserve the recording for at least two years if it is needed "as evidence [in an] investigation or court proceedings." Pl.'s Mot. for Sanctions 1. He asked the Court to stay the "case until Defendants can explain why evidence wasn't preserved." *Id*. at 2. As discussed below, I find that Wilson has not shown that Defendants improperly failed to preserve the video footage; thus, Wilson's requested relief, including a stay, is not warranted.

II. Discussion

I will construe Wilson's pro se "Motion for Spoliation of Evidence" as a motion for sanctions under Rule 37(e) of the Federal Rules of Civil Procedure. *Cf. Castro v. United States*, 540 U.S. 375, 381–82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion . . . . to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis."). Rule 37(e) provides the legal framework for evaluating spoliation claims involving otherwise discoverable electronically stored information ("ESI"), including recorded video or audio, that was not preserved for litigation. *See Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017). Under Rule 37(e),

> a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

3

Rule 37(e)'s threshold elements mirror the traditional three-part test for spoliation, which requires the moving to party to show:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Walker v. Owens*, No. 7:13cv425, 2016 WL 320998, at *2 n.3 (W.D. Va. Jan. 26, 2016) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)); *see Steves & Sons*, 327 F.R.D. at 104 ("This analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve."). "[A]ny level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence"[2] satisfies the culpability element, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011), whereas "the nuanced, fact-specific differences among these states of mind become significant in determining" any appropriate remedy or sanction for spoliation, *Victor Stanley*, 269 F.R.D. at 529. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). In any event, Wilson bears the burden of proof to establish entitlement to sanctions for spoliation. *Ball v. George Wash. Univ.*, No. 17cv507,

---

[2] Negligence is a lack of due care, the failure to exercise the level of care expected of a reasonably prudent person acting under like circumstances." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 299 F.R.D. 502, 519 (S.D. W. Va. 2014). "Gross negligence is the same as ordinary negligence, except in degree." *Id.* "In contrast, willfulness and bad faith require 'intentional, purposeful, or deliberate conduct,'" *id.* (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 530 (D. Md. 2010)), undertaken with the knowledge that the evidence was relevant to some issue in the anticipated litigation, *see Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 444, 450 (4th Cir. 2004). "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *In re Ethicon*, 299 F.R.D. at 519 (quoting *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011)). Willfulness requires a slightly lesser showing "that the actor intended to destroy the evidence," *Victor Stanley*, 269 F.R.D. at 530, when he or she "knew the evidence was relevant to some issue" in anticipated litigation, *see Hodge*, 360 F.3d at 450.

2018 U.S. Dist. LEXIS 165983, at *3 (D.D.C. Sept. 27, 2018) ("The burden of proof is on the party alleging spoliation.").

Accompanying their brief in opposition to Wilson's motion, Defendants submitted an Affidavit from J. King, the Operations Manager at ROSP. Defs.' Resp. in Opp'n Ex. 1, Aff. of J. King, ECF No. 98-1. King stated that cameras at ROSP record rapid-eye video footage. *See id.* ¶ 7. The video system routinely records over the footage every ninety days. *Id.* ¶¶ 7, 9. King noted that Wilson did not request that the footage be retained until September 2017,[3] and by then, the footage of the July 20, 2015 incident had long since been recorded over. *Id.* ¶ 8. King stated that VDOC policy requires the institutional investigator to preserve rapid-eye video footage of any "use of force incident." *Id.* ¶ 6. VDOC personnel did not document a use of force incident on July 20, 2015; thus, the investigator did not retain the video footage. *See id.* The Court has not been provided any documentation showing that VDOC personnel knew of the alleged use of OC gas before the waiver of service of the lawsuit was sent in September 2016, and it appears that VDOC personnel did not on their own recognize that the VDOC policy may have required that the video footage be retained. Furthermore, Wilson did not make a written request for the footage until October 5, 2016, *see* ECF Nos. 29-1, 29-2, which is well after the ninety-day period before the video was automatically recorded over. Thus, the VDOC and the individual Defendants did not have notice that the video footage may have contained discoverable information at a time that they could have preserved it.

Furthermore, even if Wilson showed that the Defendants had a duty to preserve the video footage and they failed to take reasonable steps to preserve it, Wilson has not made a threshold

---

[3] King is wrong that Wilson first requested the video footage in September 2017. Nonetheless, his request was well beyond the ninety-day period.

showing that the footage would have contained evidence that is relevant to the claims or defenses in this case. *See Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018) (noting that courts typically find prejudice under Rule 37(e) "when spoliation compromises [another] party's ability to present its case," particularly where the "party 'cannot present evidence essential to its underlying claim'" (quoting *Victor Stanley*, 269 F.R.D. at 532)).

Wilson has not forecast what the video footage might have shown. Rapid-eye video is taken by a surveillance camera, and Wilson was in his cell with the door closed when he claims the OC gas was sprayed through the tray slot. Thus, it is highly unlikely that the video footage would show what Wilson did, or did not do, that precipitated the alleged use of OC spray. Moreover, Wilson has not contended that the rapid-eye video footage also contains audio recording, and from past cases the Court understands that it does not. Thus, the footage would not confirm or dispel Wilson's version of his verbal interactions with the Defendants. In the spoliation context, a party must establish relevance "by offering probative evidence, not the hyperbole of argument," that the lost materials were "likely to have been favorable to its case" *E.I. du Pont de Nemours*, 803 F. Supp. 2d at 498; *see also*; *Sampson v. City of Cambridge*, 251 F.R.D. 172, 180 (D. Md. 2008) (explaining to establish relevance in the spoliation context, a party must show "a reasonable possibility, based on concrete evidence rather than fertile imagination, that access to the lost material would have produced evidence favorable to his cause"). Here, Wilson has not shown that the video footage would have contained relevant evidence.

Accordingly, Wilson has not sustained his burden to show spoliation, and he is not entitled to any remedy for the loss of the video footage. His motion will be denied in a separate order.

The Clerk of Court shall send copies of this Memorandum Opinion to the parties.

ENTER: July 23, 2019

Joel C. Hoppe
United States Magistrate Judge